REGAN, Judge.
The plaintiffs, Mr. and Mrs. Forrest H. Wiggins, Jr., filed this suit against the defendants, Foster J. Moreau, Gilbert E. Copeland, and Phoenix Insurance Company, endeavoring to recover the sum of $99,-900.00, representing damages for personal injuries, medical expenses and property damage which they assert was caused by the negligence of Moreau in the operation of a truck owned by Copeland and insured by Phoenix.
The defendants answered and denied the accusations .of negligence delineated in the plaintiffs’ petition. In addition thereto, Copeland and Phoenix Insurance Company reconvened in an endeavor to recover the sum of $422.76, representing damage to Copeland’s truck which action was predicated on the hypothesis that the negligence of Mrs. Wiggins was the proximate cause of the accident.
From a judgment of the lower court dismissing the plaintiffs’ suit and awarding the defendants the sum of $422.76 against the plaintiffs solidarily, they have prosecuted this appeal. Pending the appeal, Wiggins died and his succession representative, if any, has not been made a party hereto.
The jurisprudence is quite clear to the effect that an appeal may not be prosecuted in the name of an individual who is deceased, and any judgment rendered by an appellate court for or against such a decedent not represented before it is an absolute nullity.[1] Therefore we shall not consider this aspect of the case. However, the appeal by Mrs. Wiggins, who was cast solidarily with her husband, may be disposed of herein.[2]
The record discloses that the plaintiff, Mrs. Jane Wiggins, was driving toward the lake or in a northerly direction on Severn Avenue. When she reached the Severn Avenue bridge which crosses the canal separating the two roadways of Veterans Highway, she stopped behind two vehicles which were waiting for the traffic in that roadway to clear. When the vehicles in front of her moved on, she drove to the yield sign which controls traffic crossing the Severn Avenue bridge and stopped with the front of her automobile approximately parallel with that sign. However, at this point, she did not have a clear view of traffic approaching in Veterans from her right because a post obstructed her vision, so she moved her vehicle forward in order to obtain a better view and then came to a complete stop. She looked to her right and claims to have observed the defendant’s truck at a distance of 400 to 500 feet away. In any event, she then decided to drive across the highway, and in the course thereof, the right rear portion of her vehicle was struck by the front portion of the truck being driven by Moreau, the employee of Gilbert E. Copeland. Mrs. Wiggins insists that her vehicle was struck when the rear portion thereof was in the right or northernmost traffic lane of Veterans Highway.
On the other hand, Foster J. Moreau, the driver of the truck, testified emphatically that he was traveling in the left lane of traffic, nearest to the canal which separates the two roadways of Veterans Highway. He related that he initially noticed the plaintiff’s automobile when it stopped or appeared to stop on the Severn Avenue bridge in obedience to the yield sign. At this point, he estimated that he was approximately 60 to 65 feet from the intersection. However, when he was approximately 30 feet removed therefrom, he saw Mrs. Wiggins drive into the intersection, but at this point he was unable to bring his vehicle to a stop in time to avoid the *377 collision. Moreau testified very convincingly that the collision occurred in the left traffic lane of Veterans Highway.
In any event, the evidence contained in the record preponderates to the effect that the skid marks from Moreau’s tires were impressed on the roadway in the left lane of traffic and that his vehicle came to a stop in that lane. Mrs. Wiggins, under cross examination, explained that she could not see well at a distance without her glasses and that she did not have them on when the collision occurred which may explain the discrepancy between her and Moreau’s estimate of distances. She frankly admitted that after she had once looked to her right and calculated the distance of approaching traffic, she drove into the intersection without again observing the location of traffic emanating from that direction.
As pointed out by the trial judge, the evidence adduced herein was, to some extent, conflicting. However, after weighing the relative merits of testimony adduced on behalf of the respective litigants, he concluded that the preponderance of the evidence established that the accident did in fact occur in the left lane of traffic, and that the proximate cause of the collision was the negligence of Mrs. Wiggins in driving directly into the path of oncoming traffic at a time when it was unsafe to do so.[3]
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We are of the opinion that no useful purpose would be served by indulging in a protracted discussion of the foregoing testimony or be endeavoring to reconcile the respective litigants’ versions of the manner in which the accident occurred. The trial judge accepted the defendants’ version thereof and our analysis of the record convinces us that the evidence preponderates in their favor and the judgment is therefore correct.
For the, foregoing reasons, the judgment of the lower court is hereby affirmed insofar as Mrs. Jane Wiggins is effected thereby, and she is to pay all costs incurred herein.
Affirmed.

. See Todd Shipyards Corporation v. Lomm, La.App., 190 So.2d 125 (1966).

. Hillebrandt v. Home Indemnity Co., 177 La. 349, 148 So. 254 (1933); Todd Shipyards Corporation v. Lomm, La.App., 190 So.2d 125 (1966).

. R.S. 32:123 provides that: “0. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on on another highway so closely as to constitute an immediate hazard.”